IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| Michelle Denise Parker, | Civil Action No. 3:21-cv-3708-TMC |
| Plaintiff, | |
| v. | **ORDER** |
| Honorable Christine E. Wormuth, Secretary of the Department of the Army, in her official capacity, | |
| Defendant. | |

Plaintiff Michelle Denise Parker, proceeding *pro se*, brought this action alleging various forms of discrimination in connection with her employment by the Department of the Army at Fort Jackson, South Carolina. (ECF No. 1). Plaintiff alleges she was employed by the Department of the Army as an administrative assistant in the Adjutant General School, Soldier Support Institute at Fort Jackson in Columbia, South Carolina. (ECF No. 1 at 7). Plaintiff claims she suffered employment discrimination and was subjected to a hostile work environment on account of her race, sex and disability. *Id*. at 7–9. Additionally, Plaintiff suggests she suffered retaliation for engaging in protected activity. *Id*. Finally, Plaintiff alleges that she was constructively discharged when she was forced to take disability retirement. *Id*. at 8.

When Plaintiff originally filed suit, she initially named as Defendants seven individuals who were supervisors or in senior positions for the Army. *Id*. at 3–8. In accordance with 28 U.S.C. § 636(b)(1) and Local Civil Rule 73.02(B)(2)(e), (g) (D.S.C.), this matter was referred to a magistrate judge for all pretrial proceedings. Defendants subsequently filed a motion to dismiss, arguing that Plaintiff failed to properly assert her claims against the head of the Department in

1

question—the Army—and, therefore, had failed to bring any claims against her "employer" under Title VII. (ECF No. 11 at 4). On February 2, 2023, the court entered an order granting Defendants' motion to dismiss without prejudice and with leave to amend. (ECF No. 29).

Plaintiff subsequently filed an amended complaint. (ECF No. 34). Defendant filed a Motion to Dismiss or in the Alternative for Summary Judgment (ECF No. 40). Now before the court is a Report and Recommendation ("Report"), recommending that the court grant Defendant's motion. (ECF No. 49). Plaintiff filed objections to the Report, (ECF No. 52), to which Defendant replied (ECF No. 53). The matter is now ripe for review.

**Background**

Plaintiff alleges she worked for Defendant beginning February 2006 and eventually served as the administrative specialist in the adjutant general school, the largest school and directory within the soldier support institute. (ECF No. 34-1 at 1). In October 2018, Plaintiff's direct supervisor Douglas Ward ("Ward") determined that additional duties should be added to Plaintiff's position description ("PD"); specifically, Plaintiff's PD was changed from supporting the Commandant and Deputy Commandant to providing scheduling and travel support for two additional adjutant general school leaders. Defendant presented evidence that the additional duties in Plaintiff's PD did not constitute a government employment grade increase, but, in fact, secured her current GS 9 grade since, without the additional duties, Plaintiff would have only been classified as a GS 7. [ECF No. 48-1 at 15–18].

Plaintiff filed a complaint with the Army Equal Employment Opportunity ("EEO") Office in October 2019, alleging that she was subjected to harassment and discrimination based on race and sex. (ECF No. 40-1 at 13; ECF No. 34-4 at 1). Plaintiff complained that the additional duties in her PD were not similar or consistent with those assigned to other employees in her position and

that her work performance was continually being scrutinized by adjutant general school leadership. *Id*.

In July 2020, Plaintiff submitted a request for COVID-19 accommodations concerning her work environment. (ECF No. 48-2 at 160). Defendant granted Plaintiff these accommodations:

> a. Ms. Parker will be authorized to alternate (daily) telework and work from her desk . . . . Modifications to this routine requires advance approval.
>
> b. Following are accommodations already provided to Ms. Parker:
>
>> 1) Purchased and installed modifications (frosted glass panels) to Ms. Parker's workstation to reduce the likelihood of direct transmission.
>>
>> 2) Placed tape on the carpet around her workstation to encourage foot traffic to remain approximately 6-feet from desk.
>>
>> 3) Placed a sign at the main entranceway to the AG School encouraging foot traffic to use alternative entrances to the main hallway where Ms. Parker sits to decrease (but not eliminate) casual contact.
>>
>> 4) [Plaintiff's supervisor] Ward sent an email (twice) to all AG School staff encouraging them to reduce foot traffic down the main entranceway hallway.
>>
>> 5) Provided Ms. Parker cleaning supplies and masks.

(ECF No. 48-2 at 161).

In February 2021, Plaintiff filed a second EEO complaint asserting that she was subjected to discrimination and harassment "based on her disability (mental), race (African American), sex (female) and reprisal" when Defendant "failed to adhere to the modified accommodation by not enforcing six feet of social distancing around her workstation and not limiting the personnel traffic through the main entry way to the AGS" and when Defendant failed to respond to Plaintiff's "request to modify her approved accommodation and telework schedule from three days to five days." (ECF No. 40-2 at 11–12); (ECF No. 34-4 at 2).

Plaintiff's reasonable accommodation ended on March 12, 2021, and she was told she was required to return to full-time in-person work. According to Ward's statement in connection with Plaintiff's disability retirement, submitted to the court by Plaintiff,

> [Plaintiff] was teleworking on alternating work days as a reasonable accommodation (RA) related to COVID-19. The RA ended on [March 12, 2021] and she was required to return full time to in-office work. [Plaintiff] continued to telework on April 6, 8, and 12 without authorization. [Plaintiff] was notified via email on three occasions, that if she continued to telework and not report to her office, she would be carried as AWOL. She was then AWOL on April 13–16 (four days). She was then on Sick Leave April 19-23.
>
> [Plaintiff] is the only Administrative Specialist for the Adjutant General School (AGS). She sits within the entryway to the AGS and part of her job is to greet all visitors to the AGS and help them; especially if they are meeting with the Commandant, CSM CWO or Deputy. Most of the personnel traffic coming to the AGS is unscheduled and requires face-to-face interaction to be effective. There is also a continuous need for answering the phone. The AGS receives multiple calls every hour of the workday that require routing to the appropriate person or passing of messages. These calls must be screened . . . [and] [v]oice mail is ineffective as [Plaintiff] needs to be available to check her messages. . . . This is a one-deep position and her physical absence increases the workload on all other personnel—preventing them from performing their tasks. There is no one available to "sit [at] her desk" when she is not working.

(ECF No. 48-3 at 160). On June 14, 2021, Plaintiff was issued a letter of reprimand for being absent from work without authorization and without having requested leave on April 13–16, 2021. *Id*. at 109–11. Subsequently, Plaintiff requested disability retirement based on the opinion of her treating psychiatrist that "continuation of employment will continue to worsen [Plaintiff's mental health disorders] and is not in [the] best interest of her or . . . the Army Civilian service Corps." (ECF No. 48-3 at 164–65).

Based on the foregoing, Plaintiff asserts claims for race and sex discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e et seq., claims for

4

retaliation and a hostile work environment under Title VII, and claims for disability discrimination pursuant to the Rehabilitation Act, 29 U.S.C. § 701 et seq. ("Rehabilitation Act").[1]

## Standard of Review

The recommendations set forth in the Report have no presumptive weight, and this court remains responsible for making a final determination in this matter. *Elijah v. Dunbar*, 66 F.4th 454, 459 (4th Cir. 2023) (citing *Mathews v. Weber*, 423 U.S. 261, 270–71 (1976)). The court is charged with making a *de novo* determination of those portions of the Report to which a specific objection is made, and the court may accept, reject, modify, in whole or in part, the recommendation of the magistrate judge or recommit the matter with instructions. 28 U.S.C. § 636(b)(1). Thus, "[t]o trigger de novo review, an objecting party 'must object to the finding or recommendation on that issue with sufficient specificity so as reasonably to alert the district court of the true ground for the objection.'" *Elijah*, 66 F.4th at 460 (quoting *United States v. Midgette*, 478 F.3d 616, 622 (4th Cir. 2007)). However, the court need only review for clear error "those portions which are not objected to—including those portions to which only 'general and conclusory' objections have been made[.]" *Dunlap v. TM Trucking of the Carolinas, LLC*, 288 F. Supp. 3d 654, 662 (D.S.C. 2017); *see also Elijah*, 66 F.4th at 460 (noting that "[i]f a litigant objects only generally, the district court reviews the magistrate's recommendation for clear error only"). Furthermore, in the absence of specific objections to the Report, the court is not required to give any explanation for adopting the magistrate judge's recommendation. *Greenspan v. Brothers*

---

[1] Plaintiff technically brought her disability discrimination claim under the Americans with Disabilities Act, 42 U.S.C. § 12102, et seq. ("ADA"); however, the magistrate judge construed the claim as having been asserted under the Rehabilitation Act which applies to federal employees. (ECF No. 49 at 2 n.1).

*Prop. Corp.*, 103 F. Supp. 3d 734, 737 (D.S.C. 2015) (citing *Camby v. Davis*, 718 F.2d 198, 199–200 (4th Cir. 1983)).

Additionally, since Plaintiff is proceeding *pro se*, this court is charged with construing her pleadings and filings liberally in order to allow for the development of a potentially meritorious case. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Martin v. Duffy*, 858 F.3d 239, 245 (4th Cir. 2017) (noting that "when confronted with the objection of a *pro se* litigant, [the court] must also be mindful of [its] responsibility to construe *pro se* filings liberally"). Accordingly, "when reviewing *pro se* objections to a magistrate's recommendation, district courts must review *de novo* any articulated grounds to which the litigant appears to take issue." *Elijah*, 66 F.4th at 460–61. This does not mean, however, that the court can ignore a *pro se* party's failure to allege or prove facts that establish a claim currently cognizable in a federal district court. *See Stratton v. Mecklenburg Cty. Dep't of Soc. Servs.*, 521 Fed. App'x 278, 290 (4th Cir. 2013) (noting that "'district judges are not mind readers,' and the principle of liberal construction does not require them to 'conjure up questions never presented to them or to construct full-blown claims from sentence fragments'" (quoting *Beaudett v. City of Hampton*, 775 F.2d 1274, 1277–78 (4th Cir. 1985))).

## Report of the Magistrate Judge

With respect to Plaintiff's Title VII discrimination claims, the magistrate judge concluded that "Plaintiff has failed to establish a prima facie case in that the actions she complained of—that she was overly scrutinized and that she was given additional duties—do not indicate her employer took . . . 'adverse employment action'—one that 'adversely affect[s] the terms, conditions, or benefits of the plaintiff's employment' that causes 'significant detrimental effect.'" (ECF No. 49 at 14 (quoting *Holland v. Wash. Homes, Inc.*, 487 F.3d 208, 219 (4th Cir. 2007))). The magistrate

judge noted that "the parties agree that Plaintiff's PD enlargement did not impact her pay, grade, duty location, or supervisory status, and [that] Plaintiff has failed to submit admissible evidence of adverse terms causing significant detrimental effects." *Id*. at 15.

Additionally, the magistrate judge found "no indication in the record that the actions complained of—that Plaintiff was overly scrutinized or given additional duties—occurred *due* to her race or sex." *Id*. (emphasis added). In particular, the magistrate judge rejected Plaintiff's attempt to use comparators to show Defendant's actions were motivated by Plaintiff's race or sex:

> As relevant here, Plaintiff first argues that her enlarged PD was inconsistent with the duties and responsibilities of others who held the same position as Plaintiff. [*See, e.g*., ECF No. 34-1 at 1, ECF No. 48 at 2]. Second, Plaintiff argues that "Defendant did not change two male civilian employees' PD instead added their duties to Plaintiff's PD," presumably referencing Jeffrey Miller and Marcus Campbell, who Plaintiff describes as having "separate Position Description with separate duties, responsibilities, objectives, Senior Leaders . . . ." [ECF No. 34-1 at 1, 9, ECF No. 48 at 3]. Plaintiff also argues extensively and repeatedly that "Defendant erroneously handpicked, hired, promoted, ensure[d], and increased incomes of white male civilian employees and friends" and did not treat Plaintiff the same. [ECF No. 34-1 at 5; ECF No. 48 at 5–6].
>
> "To establish a valid comparator, the plaintiff must produce evidence that the plaintiff and comparator dealt with the same supervisor, [were] subject to the same standards and . . . engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Haynes v. Waste Connections, Inc*., 922 F.3d 219, 223–24 (4th Cir. 2019) (citations omitted). Although Plaintiff repeatedly compares herself to other employees, arguing generally that white males were treated better, Plaintiff fails to offer any allegation or evidence that these other employees are valid comparators. *See also Carter v. Ball*, 33 F.3d 450, 456 (4th Cir. 1994) ("The mere absence of minority employees in upper-level positions does not suffice to prove a prima facie case of discrimination without a comparison to the relevant labor pool.").

*Id*. at 17–18. The magistrate judge also noted that Plaintiff's own "argument that other black female executive assistants were treated more favorably than her . . . does not support an inference that Defendant discriminated against Plaintiff based on her race or sex." *Id*. at 18 n.5. And, finally, the magistrate judge concluded that Defendant offered a nondiscriminatory reason for the decision

to add duties to Plaintiff's PD—"to secure her GS 9 grade"—which Plaintiff failed to rebut. *Id*. at 18–19.

As to Plaintiff's disability discrimination claims under the Rehabilitation Act, the magistrate judge determined Plaintiff "failed to identify an adverse employment action, or any action, that Defendant took based on her disability. Although Plaintiff argues, for example, that she was provided accommodations to encourage social distancing, and that these accommodations were not fully respected, she has failed to show certain people not fully respecting her social distancing accommodations adversely affected the terms, conditions, or benefits of her employment." *Id*. at 20. The magistrate judge determined, moreover, that the refusal to allow Plaintiff to telework full-time did not constitute an adverse employment action, *see id*. at 22 (noting generally that "'denial of a telework arrangement on its own does not constitute an adverse employment action,'" *Redmon v. United States Capitol Police*, 80 F. Supp. 3d 79, 87 (D.D.C. 2015) (citing cases)), and that Plaintiff failed to offer any basis for the conclusion that Defendant's decision was based on Plaintiff's "mental health" disability. And, "[t]o the extent that Plaintiff is bringing a claim for failure to accommodate as to Defendant's denial of her telework request," the magistrate judge concluded that Plaintiff "has not shown that with the reasonable accommodation she requested, to be allowed to exclusively telework, she could still perform the essential functions of her position," in contrast to the "undisputed evidence" offered by Defendant showing "an essential function of Plaintiff's position was to accomplish her work in person." *Id*. at 23.

Regarding Plaintiff's claims that she was retaliated against in violation of Title VII and the Rehabilitation Act, the magistrate judge "assume[d] Plaintiff engaged in protected activities when she filed [EEO] complaints on or around March 2019, October 2019, and February 2021" and construed Plaintiff's position to be "that she was retaliated against following these protected

8

activities when her PD was enlarged effective June 2019, when Defendant failed to enforce her modified accommodations or grant her telework privileges on and around September 22, 2020, and when she was issued a letter of reprimand regarding her AWOL status on June 14, 2021." *Id*. at 25.  The magistrate judge first determined that Plaintiff failed "to establish a prima facie case for some, if not all, of the complained-of materially adverse actions taken," noting that "[a]lthough temporal proximity may suffice to establish causation when the protected activity and adverse action are 'very close' or less than, for example, three months apart . . . here, generally, the complained-of adverse actions appear too remote in time from Plaintiff's protected activities." *Id*. at 26.  Second, the Report states that "even if she had established a prima facie case, Plaintiff has failed to provide any allegation or evidence that Defendant's offered reasons for the actions taken are pretextual, as discussed above regarding her enlarged PD and her accommodations," and that, "[a]s to the letter of reprimand, . . . Plaintiff does not dispute[] that she did not come to work on the days in question after she was informed she was required to work in-person" and, "[t]here is no indication Defendant's reason offered for issuing the letter of reprimand is pretextual." *Id*. at 26–27.

Turning to Plaintiff's hostile work environment claim, the magistrate judge concluded Plaintiff "failed to allege or provide evidence that the treatment she complains of is either sufficiently severe or pervasive or was based on her gender, race, or disability." *Id*. at 28.  The magistrate judge rejected the following alleged conduct as a basis for Plaintiff's hostile work environment claims:  Defendant added duties to her PD; Plaintiff received only a "fully successful" rather than "outstanding" performance rating; Plaintiff "was required to perform certain work activities and was excluded from certain other work activities"; and Plaintiff "was forced to return to the office in person" and was determined to have been AWOL for 30 hours. *Id*. Additionally,

9

the magistrate judge found that the following additional allegations from Plaintiff did not constitute "sufficiently severe or pervasive treatment that was based on her gender, race, or disability" even if Plaintiff had provided evidentiary support for them: that co-workers "purposely coughed very loud close to her workstation"; talked "very loud to each other" and "rudely interrupt[ed] Plaintiff's conversation with people at her workstation"; "purposely us[ed] profanity (F-word) within the Plaintiff's hearing"; "purposely walk[ed] very close to Plaintiff's workstation looking at her cellphone and documents on desk"; "required Plaintiff to remain in office longer than male employees for departure of mandated home lockdown/telework for COVID19 Pandemic"; and "purposely charged Plaintiff leave for an EEO Appt [and] purposely removed Plaintiff's computer from workstation while she was on sick leave for mental health . . . ." *Id*. at 29–30.

To the extent Plaintiff asserts that her medical/disability retirement constituted a constructive discharge, the magistrate judge acknowledged that "'[a]n employee is considered constructively discharged if an employer deliberately makes the working conditions intolerable in an effort to induce the employee to quit,'" *id*. at 24 (quoting *Freeman v. Dal-Tile Corp.*, 750 F.3d 413, 425 (4th Cir. 2014) (citations omitted)) but found that "Plaintiff has failed to allege or offer evidence of 'working conditions . . . so intolerable that a reasonable person in [her] position would have felt compelled to resign,'" *id*. (quoting *Green v. Brennan*, 578 U.S. 547, 555 (2016)).

Finally, the magistrate judge examined Plaintiff's EEO complaints and determined that they failed to provide any notice that Plaintiff was pursuing a failure to promote claim. *Id*. at 34. Accordingly, the Report concludes that Plaintiff failed to exhaust a purported failure to promote claim. *Id*.

Based on the foregoing, the magistrate judge recommended the court grant Defendant's Motion to Dismiss or, in the alternative, for Summary Judgment with prejudice. *Id*. at 35.

**Discussion**

Plaintiff filed voluminous objections to the Report. (ECF No. 52). On the whole, this submission constitutes a retelling of Plaintiff's story, apparently cataloguing every alleged slight during her employment and challenging the merits of each of her employer's decisions rather than the magistrate judge's findings and conclusions. To the extent Plaintiff raises "objections" therein, it appears to the court that Plaintiff is merely objecting to her employer's alleged conduct. The court has carefully reviewed Plaintiff's objections (ECF No. 52) and additional documents (ECF No. 52-1) and is constrained to conclude that the vast majority of Plaintiff's objections are non-specific and entirely unrelated to the Report. The purpose of magistrate review is to conserve judicial resources, and the objections presented to the court here—merely repeating arguments and factual allegations already considered by the magistrate judge—seem to undermine this purpose by having the district court duplicate the considerable efforts of the magistrate judge. Nevertheless, out of an abundance of caution, the court has carefully reviewed Plaintiff's objections *using a de novo standard*. *See Elijah*, 66 F.4th at 461 (de novo standard applies to review of objections repeating arguments presented to magistrate judge). And, having thoroughly reviewed the detailed and thorough 37-page Report, the court finds no reason to deviate from the recommendations of the magistrate judge and agrees with and wholly **ADOPTS** the magistrate judge's findings, conclusions and recommendations in the Report (ECF No. 49), which are incorporated herein by reference. Accordingly, the court **GRANTS** Defendant's Motion to Dismiss or in the Alternative for Summary Judgment (ECF No. 40).

**IT IS SO ORDERED.**

s/Timothy M. Cain
United States District Judge

March 26, 2024
Anderson, South Carolina

## NOTICE OF RIGHT TO APPEAL

The parties are hereby notified of the right to appeal this order pursuant to Rules 3 and 4 of the Federal Rules of Appellate Procedure.